Richard Hannigan, Respondent, *v*. The Lehigh and Hudson River Railway Company, Appellant.

1. Negligence — Railroad — Drawheads. It is not the duty of a railroad company to so equip its cars and trains that the drawheads thereon shall not come in contact when cars are being coupled.

2. Meeting of Drawheads in Coupling Cars — Ordinary Risk of Brakeman's Service. When the evidence in an action by a railroad brakeman to recover damages from the company for a personal injury sustained in coupling cars shows that the meeting of drawheads is an ordinary incident of coupling cars and a condition to be expected when a coupling is made, it must be deemed an ordinary risk of his service, assumed by the brakeman.

3. Absence of Deadwoods not Proximate Cause of Injury. Assuming that a railroad company was negligent in using a car upon which there were no deadwoods, still their absence cannot be deemed the proximate cause of an injury sustained by a brakeman through the drawheads coming together in coupling the car, so as to justify a recovery on that ground, where practically all the evidence in the case is to the effect that the function of deadwoods is not to prevent drawheads from coming together, and at most there is a mere scintilla of evidence to the contrary.

*Hannigan* v. *Lehigh & Hudson River R. Co.*, 91 Hun, 300, reversed.

(Argued October 24, 1898 ; decided November 22, 1898.)

Appeal from a judgment of the late General Term of the Supreme Court in the second judicial department, entered December 24, 1895, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

This action was to recover for personal injuries alleged to have been caused by the defendant's negligence. The allegations of the complaint were that the defendant furnished for the use of the plaintiff a freight car with broken, defective, unusual, unsafe and dangerous coupling appliances, in that such appliances were mismatched, uneven and entirely useless and inadequate for the purposes for which they were placed in use by the defendant, and that it negligently and carelessly permitted, used and maintained the same. The answer contained a general denial.

At the close of the plaintiff's evidence, the defendant moved for a nonsuit upon the grounds: "*First*, that the accident which caused the plaintiff's injury was, under the circumstances of this case, a risk which he assumed as an employee of this defendant, and for which the defendant is not liable; *second*, that there is no evidence of negligence on the part of the defendant which caused the accident to the plaintiff on this occasion; *third*, that no negligence or omission of duty on the part of the defendant has been shown." That motion was denied, and the defendant excepted. When the evidence was finally closed, the defendant again renewed its motion for a nonsuit upon the grounds already stated, and also upon the further ground that the violation of the rule requiring the use of coupling sticks was contributory negligence on the part of the plaintiff and prevents a recovery by him. That motion was also denied, and the defendant excepted.

At the time of the accident the plaintiff was a brakeman and had been in the employ of the defendant about three months. His work was upon freight trains running between Phillipsburg and Maybrook. The accident occurred at about seven o'clock on the morning of December 5, 1893, at Hudson Junction. The train arrived there at about that hour. The plaintiff uncoupled the engine and tender from the head car of the train, so that it might take a fresh supply of water from the tank or crane at that place. The engine was then run back to the train, and while coupling the tender to the car the plaintiff's hand was caught between the drawheads and injured. There were no deadwoods upon the car to which the tender was being coupled.

The plaintiff gave evidence to the effect that if there had been double deadwoods upon the car to which the tender was coupled his injury would not have occurred, and that cars in common use ordinarily have double deadwoods. Still, it is manifest from all the evidence in the case that the purpose of deadwoods is not to prevent the drawheads from coming together, and that in many, if not most cases, the drawheads come in contact before the bumpers meet. The plaintiff upon

his cross-examination testified : " These drawheads are between the bumpers on the car and the engine. They extend from either end of the car. They are attached to a bar that runs back under the sill of the car. At the end of these drawheads there is a sort of a spring so that when the drawheads strike there is a spring to the car that way that relieves it. That is what is called slacking the train. In the case of cars, when you are called upon to couple them, the drawheads and bumpers come together at the same time about. They will strike and this spring will give and then the bumpers will come together. As a general thing the bumpers will generally come together first, but they just strike so as to give an opportunity to the brakeman to insert the link." Upon examination by his own counsel he farther testified : " The bumpers generally strike first on some of the cars ; sometimes the drawheads and bumpers strike about together. When the bumpers strike first the drawheads cannot come together at all."

The plaintiff's witness Drake also testified : " In coupling cars there is some cars that the drawheads come together first and others the bumpers comes together first. In cars where the drawheads come together first, sometimes the bumpers touch afterwards ; the most of them will ; if the cars are struck pretty hard the bumpers will come together. When they are struck hard the drawheads strike first, and then the bumpers come together with great force, and when they come down slowly the drawheads strike and the bumpers do not, if they don't strike very hard. They may strike very light, though. If they strike very light it depends upon what cars they are, whether the drawheads touch when the connection is made, and the bumpers do not strike at all. There is a great difference in cars and there is a difference in drawheads and a difference in the size of bumpers, and there is also a difference in the length of drawheads. It is a fact that some of them project further from the front of the car than others. There is a variation of a couple of inches I should think. I cannot tell how far they ordinarily project in front of the bumper.

In some cases they go farther. I would not say two·or three inches; not that far. It is very seldom that you see one two inches. I never noticed whether they project two or three inches in front of the bumpers. I can't tell whether they do come that far or not. It is a fact when the drawheads are struck they are pushed back under the car if there are no bumpers there. Whether there are bumpers there or not they go back, and they can be thrown forward."

Therefore, it is apparent from the evidence of the plaintiff, as well as that of the defendant, that the coming together of the drawheads is an ordinary incident of coupling cars whether there are deadwoods on the cars or not. Indeed, the proof shows that the cars of various railroads are not equipped with deadwoods at all.

*John G. Milburn* and *John J. Beattie* for appellant. No negligence on the part of the defendant was shown. (*Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 100 N. Y. 466, 467; *Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 N. Y. 403; *Edall* v. *N. E. R. R. Co.*, 18 App. Div. 216; *Sisco* v. *L. & H. R. R. Co.*, 145 N. Y. 296; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90, 98.) It is a risk incident to a brakeman's work that his hand may be caught between the drawheads in the act of coupling. (*Crown* v. *Orr*, 140 N. Y. 450; 4 Am. & Eng. Ency. of Law, 420.) The absence of the bumpers was apparent to the plaintiff, and he assumed the risk incident to the coupling he attempted to make. (Thomp. on Neg. 1008; *Crown* v. *Orr*, 140 N. Y. 450; *Williams* v. *D., L. & W. R. R. Co.*, 116 N. Y. 628; *De Forest* v. *Jewett*, 88 N. Y. 264; *Appel* v. *B., N. Y. & P. R. Co.*, 111 N. Y. 550; *Cahill* v. *Hilton*, 106 N. Y. 518; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 277–280; *Arnold* v. *D. & H. C. Co.*, 125 N. Y. 15; Beach on Cont. Neg. § 138; *Ferguson* v. *Coal Co.*, 4 N. Y. S. R. 423; *Kohn* v. *McNulta*, 147 U. S. 238; *Mich. Cent. R. R. Co.* v. *Smithson*, 45 Mich. 220; *Chicago, etc., R. R. Co.* v. *Curtis*, 71 N. W. Rep. 42; *Railway Co.* v. *Black*, 88 Ill. 112; *Tuttle* v. *D., G. H. & M. Ry.*, 122

U. S. 189.)   The defendant violated the rule requiring him to use a stick in coupling, and it was error to leave the question to the jury whether the rule was an operative rule. (*Corcoran* v. *D., L. & W. R. R. Co.*, 126 N. Y. 673; *Wolsey* v. *R. R. Co.*, 33 Ohio St. 227; *Sutherland* v. *T. & B. R. R. Co.*, 125 N. Y. 737; *La Croy* v. *N. Y., L. E. & W. R. R. Co.*, 132 N. Y. 570.)

*Lewis E. Carr* and *John W. Lyon* for respondent.   The defendant was negligent in furnishing for the use of the plaintiff a car with a broken and defective coupling appliance. (*Hynes* v. *McDermott*, 91 N. Y. 451; *Baird* v. *Mayor, etc.*, 96 N. Y. 567; *Von Wien* v. *S. U. & N. Ins. Co.*, 118 N. Y. 94; *Green* v. *Fortier*, 80 N. Y. 640; *Maher* v. *C. P., N. & E. R. R. R. Co.*, 67 N. Y. 52–55; *Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 N. Y. 403; *Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 100 N. Y. 462; *Millott* v. *N. Y. & N. E. R. R. Co.*, 46 N. Y. S. R. 145; 139 N. Y. 642; *De Kay* v. *N. Y., L. E. & W. R. R. Co.*, 102 N. Y. 666.)   The use of a car with its bumpers broken off and the spring out of the drawhead, broken and gone, is not one of the risks which plaintiff assumed. (*Lawless* v. *Conn. R. Ry. Co.*, 136 Mass. 1; 4 Am. & Eng. Ency. of Law, 428.)   The rule of the defendant requiring its employees to make couplings with a stick was inoperative, and the plaintiff was not guilty in any event, the coupling being one that could not be made with a stick. (*Hayes* v. *B. & D. Mfg. Co.*, 41 Hun, 407; *Sutherland* v. *T. & B. R. R. Co.*, 125 N. Y. 737; *La Croy* v. *N. Y., L. E. & W. R. R. Co.*, 132 N. Y. 570.)   All questions of fact were submitted to the jury for its disposition under proper instructions by the trial court, and no error was committed which calls for a reversal here. (*Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 546; *Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 100 N. Y. 462.)

MARTIN, J.   The first proposition contended for by the plaintiff is that it was the duty of the defendant to furnish

cars equipped with deadwoods which would prevent the drawheads from coming in contact when a coupling was being made. It is apparent from the evidence in this case that the purpose of deadwoods is not to prevent the drawheads from coming together, but they are placed upon cars for quite a different purpose.

The single question presented upon this appeal is whether it is the duty of a railroad company to so equip its cars and trains that the drawheads thereon shall not come in contact when cars are being coupled. This court has several times considered the purpose of drawheads and held that it was negligence for a railroad company to use cars where the drawheads would not come in contact. (*Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 100 N. Y. 462; *Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 N. Y. 398.) In the case at bar it has been held that it was negligence to use a car where the drawheads would meet.

We think the evidence shows quite clearly that the meeting of the drawheads is an ordinary incident of coupling cars and a condition to be expected when a coupling is made, and was, therefore, one of the ordinary risks of the service in which the plaintiff was engaged. His employment was necessarily hazarduous, and when he entered it he assumed all the risks and perils of the service and those that were known to him or were apparent to ordinary observation. That one of the risks which he assumed was the danger of injury from the meeting of drawheads when coupling cars, there can, under the evidence, be no doubt. Indeed, it is a matter of common knowledge that drawheads to cars are liable to and ordinarily do come in contact when cars are being coupled, and that a risk of injury therefrom exists whenever a brakeman is performing that service. Therefore, under the evidence, it is obvious that the plaintiff's injury arose from a cause which was included in the risks which he assumed.

But it is said that the defendant was negligent in using a car upon which there were no deadwoods. If that were assumed, still the plaintiff could not recover unless he proved

32

that their absence was the cause of his injury. When we look at the record, we find that practically all the evidence in the case is to the effect that the function of deadwoods is not to prevent drawheads from coming together, and at most there is but a mere scintilla of evidence to the contrary. Under those circumstances, this court would not be justified in holding that the plaintiff's injury was the result of the defendant's omission to place deadwoods upon the car in question. As was said by this court in *Hudson* v. *R., W. & O. R. R. Co.* (145 N. Y. 408, 412): "Where the evidence which appears to be in conflict is nothing more than a mere scintilla, * * * this court will still exercise jurisdiction to review and reverse if justice requires." Applying that rule, it is evident that the absence of deadwoods on the defendant's car was not the proximate cause of the plaintiff's injury, and hence he could not properly recover upon that ground.

It is true, as claimed by the plaintiff, that he testified upon the trial that the drawhead in the car was loose and broken, and that " the spring was out of the drawhead — out of the car." This was the only evidence in the case which tended to sustain the allegations of the complaint that the coupling appliances were broken or defective. But we find no evidence in the record to show, or which even tends to show, that the plaintiff's injury in any way resulted from that cause.

It is at least problematical if the plaintiff sufficiently established his freedom from contributory negligence to justify the submission of the case to the jury. It appears from his own testimony that it was " perfectly light " when he uncoupled the tender from the car; that he saw the drawhead and could see the link. It must, therefore, have been sufficiently light when he undertook to recouple them to see the absence of the deadwood if he had looked, so that if its absence was the cause of his injury he could, by the use of ordinary prudence and reasonable care, have discovered it, and was negligent in not doing so. But it is doubtful if that question is before us, as there is no exception which clearly raises it.

But, independently of the question of contributory negligence, we are of the opinion that the court erred in denying the plaintiff's motion for a nonsuit, and that for that reason the judgment should be reversed.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed, etc.