# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## FIRST DISTRICT—MARCH TERM, 1895.

## Philip D. Armour, Jonathan O. Armour, Philip D. Armour, Jr., and George H. Webster, v. Ferdinand A. Czischki, Administrator De Bonis Non.

1. MASTER AND SERVANT.—*Duty of Master, etc.*—It is the duty of the master to exercise reasonable care in furnishing reasonably safe protection to his servants while at work.

2. DAMAGES—*Death from Negligence.*—In an action for damages resulting from the death of a kinsman by negligence, the pecuniary loss which the proof affirmatively shows to have been sustained is the sole measure of the recovery, and the satisfaction of that loss is the sole purpose for which the action can be brought under the statute.

3. SAME— *When More than Nominal Recoverable.*—Where the deceased, a daughter, was accustomed to make gratuitous contributions to her parents, who, being in needy circumstances, expected them, it was held that something more than nominal damages would be sustained.

**Trespass on the Case.**—Death from negligent act. Appeal from the Superior Court of Cook County; the Hon. GEORGE F. BLANKE, Judge, presiding. Heard in this court at the March term, 1895. Remittitur ordered. On failure to enter, reversed and remanded. Opinion filed June 3, 1894.

CAMPBELL & CUSTER, attorneys for appellants.

BRANDT & HOFFMANN, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

Appellee's intestate came to her death by slipping into a glue crusher through an unguarded opening in the floor of appellant's glue factory, where she was at work.

She was unmarried and twenty-seven years of age. Her wages were eighty-five cents a day. She had worked in the factory for at least the year and a half preceding her death, and on that floor for the last preceding three weeks.

Her duties were to carry glue on frames from the ovens to a pile near the opening in the floor through which men dumped the glue from the frames into the hopper that fed the crushing machine, and in so doing she was obliged to go near the unguarded hole into which she slipped.

The crusher was below and the opening into it was a hole through the floor. This opening was at least four feet long by twenty inches wide. Underneath the floor and between it and the crusher was a hopper which at the top was the size of the hole in the floor, and at the bottom the size of the crusher.

Testimony introduced by the appellants tended to show that when the crusher was not in operation the hole in the floor was covered by a trap door, and that when the crusher was being operated the trap door would be raised and stand upright on its hinges, being supported in that position by a bar behind it, and thus form one side of a guard around the hole, the other three sides being formed by a three-sided movable frame about sixteen inches high, hooked to two staples in the door; and that ordinarily the glue would be dumped or thrown over the guard thus formed, into the hopper that fed the crusher, except at cleaning-up time, when the three-sided guard would be removed and the remaining glue would be brushed into the hole.

Whatever may have been the usual practice of having such a box or guard around the hole when open, it is established that on the day in question it was not in place, and that the woman, while in the exercise of ordinary care in the discharge of her duties, slipped on the glue that was scattered on the floor and plunged feet foremost into the

crusher, and was so hurt that she expired within a few minutes after her body was lifted back to the floor.

To go into the facts with greater detail would be only to confirm our conclusion that the manner in which the business was conducted was unnecessarily dangerous to employes and that the jury rightfully found the appellants responsible.

Complaint of error is made because the court admitted in evidence the following ordinance of the city of Chicago:

"In every factory, workshop, or other place or structure where machinery is employed, the belting, shafting, gearing, elevators and every other thing, when so located as to endanger the lives and limbs of those employed therein, while in the discharge of their duties, shall be as far as practicable, so covered and guarded as to insure against any injury to such employes."

It may be questioned whether a standard of negligence not known at the common law, may be created by a municipal ordinance, so as to affect and enter into the contractual relations between master and servant, but no discussion of the question is necessary in this case.

There was here a plain violation of the common law duty by the appellants to exercise reasonable care in furnishing reasonably safe protection to their servant, while at work.

We are troubled only with the question of damages.

The deceased left, as her only surviving next of kin, a father and mother, aged, respectively, sixty-seven and sixty-five years, and a sister forty years of age.

They lived in Germany. Presumptively from the sister's name she is a married woman, and there is no evidence that she was ever the recipient of any bounty from the deceased.

The dead woman's wages were eighty-five cents a day.

It seems that the parents were in poor circumstances, perhaps very poor, and that she was accustomed to send to them from time to time small sums of money ranging from five to ten dollars. The most favorable showing made by the appellee in that regard is that she may have sent to them from $60 to $75 a year, during the preceding three years.

There is nothing in the record from which we may even infer that her earning capacity would ever have been any greater than it was when she met her death.

The latest expression of the Supreme Court on this question is in the case of North Chicago Street Railroad Company v. Brodie, filed May 15, 1895, wherein the rule is pointedly reiterated that the pecuniary loss is the sole measure of damages recoverable, and that the satisfaction of that loss is the sole purpose for which an action can be instituted under the statute; and it was there held that although a brother had received from the deceased $10 or $12 a short time before his death, and on another occasion, $45, it being plain from the evidence that the brother did not rely upon the deceased for support or financial aid, no recovery except for nominal damages could be had; and a judgment that had been recovered for $2,000 in favor of the brother as next of kin, and affirmed by this court, was reversed.

Under the doctrine of that case it is plain that the only damages here recoverable are the mere pecuniary loss which the proof affirmatively shows the aged parents to have sustained by the death of the deceased.

The law will not presume any pecuniary loss to have occurred to them.

It is not like the case of the surviving parent of a deceased minor child, where the law will presume a pecuniary loss from the loss of services to which the parent was entitled; nor that of a minor child, where the presumption of law arises in favor of a pecuniary loss because of the loss of support which the deceased parent would be bound to give; nor that of a wife who loses a husband upon whom she may lawfully rely for support.

That, under the evidence, such pecuniary loss approximates the sum of $4,140, awarded by the judgment below, is scarcely susceptible of argument.

The parents had not, at the extreme outside limit, received from the deceased more than $75 a year, and there is nothing disclosed by the record from which it may even be

inferred that they had any reasonable expectation of ever receiving any greater gratuity from her.

Something more, however, than nominal damages would be sustainable under the evidence that was adduced; for a reasonable expectation of the continuance of an annual gratuity of $75 from the daughter during the remaining years of the parents, furnishes a substantial ground for a verdict and judgment to rest upon, it being proven that she was accustomed to make such gratuitous contribution to their needs, and that they looked to her for it.

Certainly, however, the judgment on the record as it now stands is for too much and must be reversed. It is not unlikely that the verdict of another jury, carefully instructed, would more nearly approximate justice than we are able to do, but appreciating the delays incident to a remanding of the cause, we are disposed to give to the appellee the liberty to come into this court and remit from the judgment all in excess of $1,500, and if he shall do so within ten days we will affirm the judgment as it shall then stand. Otherwise, the judgment will be reversed and the cause remanded.

Affirmed if remittitur is filed, otherwise, reversed and remanded.

Waterman, P. J., dissents.