THE COMMERCIAL CLUB OF INDIANAPOLIS *v.*
HILLIKER, ADMINISTRATOR.

[No. 2,169.   Filed May 25, 1898.]

DAMAGES.—*Death by Wrongful Act.—Complaint.—Beneficiaries.*—In an action by the personal representatives for damages for the death of their decedent caused by the wrongful act of another, brought under the provisions of section 285, Burns' R. S. 1894, an allegation that decedent leaves heirs and next of kin who are entitled to damages and who have been damaged is sufficient to permit the introduction of evidence to establish who the beneficiaries were. *pp. 242, 243.*

SAME.—*Death by Wrongful Act.—Elements of Damages.*—Damages for bereavement, pain, or as a solatium are not recoverable in an action for death by wrongful act, the question is one solely of pecuniary loss. *pp. 243, 244.*

SAME.—*Excessive Damages.—Death by Wrongful Act.*—A judgment in favor of the mother for $2,750.00 for the death of her daughter by the wrongful act of defendant is excessive, where the daughter was married and lived with her husband, but contributed her personal earnings amounting to $2.50 per week to the support of her mother. *pp. 243-247.*

From the Hamilton Circuit Court.   *Reversed.*

*William A. Ketcham* and *F. E. Matson,* for appellant.

*Beckett & Doan* and *Christian & Christian,* for appellee.

HENLEY, C. J.—This was an action to recover damages for the death of decedent, resulting from the alleged negligent acts of appellant. The case originated in the Marion Superior Court and was venued to the Hamilton Circuit Court. The complaint upon which the issues were joined and tried, was in three paragraphs.

In the first paragraph of complaint it is charged that appellant owned and controlled a public office building in Indianapolis, known as the Commercial Club Building, eight stories in height; that it is situ-

ated and fronts on South Meridian street; that the first story is used as a banking room in front, the second to the sixth stories inclusive, for office purposes, the seventh for a cafe, and the eighth for a restaurant; that for the convenience of its occupants, etc., two elevators had been provided, one for the purpose of carrying passengers, situated in the front part, and one for carrying freight, in the rear of said building, and that access to each of them is from a wide hallway on the first floor; that the car of the rear elevator is uninclosed, except by the walls of the shaft in which it runs, said shaft being provided with automatic gates at each of the floors; that the platform of the car is about four feet wide by five feet long, and that between the platform and the walls of the shaft is a space of four or five inches, and that there is no covering upon the car, except the roof of the building; that the front elevator is used exclusively for passengers and the rear one for freight; that on August 29, 1894, the decedent, who was a young married woman, went to said building, entering the same by the front hall way, and desiring to go to the eighth floor to see some one with whom she had business, she attempted to take passage on the front elevator, but was wrongfully and negligently prevented from so doing by the servant of appellant, who was in charge of the same, and who wrongfully refused to carry her on said passenger elevator; that said servant negligently conducted said decedent to said rear elevator, and negligently placed her upon it, and negligently started it, but failed to accompany her and manage said elevator; that it could not be properly managed and controlled unless said elevator engineer was upon it; that she was unaccustomed to riding in elevators and had no knowledge or experience in managing the same, and that said servant well knew said fact; that de-

cedent thought and believed, and was induced to believe by said servant, that said servant was upon said car, managing and controlling it; that he would not leave the same, but would carry her to her destination; that said elevator ascended at a high and dangerous rate of speed, and when decedent discovered that appellant's servant was not on it, and not knowing herself how to check or stop it, and believing that it would run out the top of said building and that she would be killed, she became frightened and terrified, and without any fault or negligence on her part she fell and was thrown from said car at the seventh floor, between the elevator car and the wall of the shaft, whereby she was killed. It is then averred that she left heirs and next of kin who are entitled to the damages, etc.

The second paragraph of complaint is substantially like the first, except that it describes the manner in which the elevator is managed and controlled by a wire rope; that the space between the platform and the car and the walls of the shaft in which it runs is between four and five inches, except at each of the floors, where the space is less than one inch, on account of projections at such floors; that at the seventh floor, she was dragged off the elevator and by reason of said projecting floor, between the platform of the car and the walls of the shaft; that said elevator was negligently constructed and unfit for use as a passenger elevator, in that it was not properly guarded and protected, and that such fact was known to appellant.

In the third paragraph it is further charged that decedent was, at the time of her death, earning $6.00 per week; that she was living with her mother and contributed to her support and the support of her infant brother and sister.

Vol. 20—16

The sufficiency of the first and third paragraphs of complaint was challenged by demurrer, which was overruled, a general denial to each paragraph was filed, trial by jury, special verdict, and judgment for appellee. The appellant assigned errors as follows: (1) That the court erred in overruling the demurrer to the amended complaint filed February 28, 1895; (2) that the court erred in overruling the demurrer to the additional third paragraph of complaint filed February 28, 1895; (3) that the complaint does not state facts sufficient to constitute a cause of action; (4) that the court erred in overruling appellant's motion for a new trial; (5) that the court erred in sustaining appellee's motion for judgment on the verdict; (6) that the court erred in rendering judgment against appellant on the verdict.

This action is brought under section 285, Burns' R. S. 1894, which is as follows: "When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased." Under this section of the statute it has been held that it is sufficient in describing the beneficiaries to allege in the complaint and prove on the trial that there are next of kin who are entitled under the statute to damages. *Jeffersonville, etc., R. R. Co.* v. *Hendricks, Admr.,* 41 Ind. 48.

The averment in the first and second paragraphs of the complaint in this case "that decedent leaves heirs

and next of kin who are entitled to damages and who have been damaged" was sufficient, under which the trial court could permit the introduction of evidence to establish who were the proper beneficiaries, if any, and how damaged by decedent's death. In addition to this, each paragraph of the complaint avers facts showing a legal duty to the injured party from the defendant, a breach of that duty, and that the injury complained of was proximately caused by such breach. We think that under the authority of the Supreme Court of this State, each paragraph of the complaint was sufficient to withstand a demurrer.

The next alleged error complained of by appellant was the overruling of the motion for a new trial. Are the damages excessive? The evidence in this case shows that the deceased was a young married woman, seventeen years of age, who was living with and was supported by her husband; that she left her husband, but no children surviving her; that her next of kin are her mother and minor brother and sister, aged, respectively, nine and thirteen years; that she worked out when she could procure work, and contributed her earnings to the support of her mother and brother and sister; that she received from two to three dollars per week for her work; and that her earnings amounted to $2.50 per week to her mother. These facts were testified to by the mother alone, who was also the only witness who testified to the ability of deceased to earn money. Witness' evidence was to the effect that the deceased had at one place received $3.00 per week, at another $2.50 per week, and at another $2.00 per week, and that at the time of her death she was not employed and was seeking employment.

In an action for death by wrongful act, the question is one solely of pecuniary loss. Damages for the bereavement, for pain, or by way of solatium are not re-

coverable. It being true that the damages in cases like this are limited to the pecuniary loss sustained by the next of kin of the deceased, and there being no legal obligation resting upon the deceased to contribute to such next of kin, damages will not be presumed but must be affirmatively proved. *Armour* v. *Czischki,* 59 Ill. App. 17; *Diebold* v. *Sharp,* 19 Ind. App. 474.

The facts in this case make it a most peculiar one. We have been unable to find any reported case like it in this State, or in any of the courts of this country. It is true that our courts have often held that an action would lie under our statute in favor of the father or mother or next of kin for the death by wrongful act of an adult son or daughter unmarried, who at the time of his or her death was contributing to the support of the persons for whose benefit the action was brought. *Louisville, etc., R. W. Co.* v. *Wright,* 134 Ind. 509; *Diebold* v. *Sharp, supra.* But the facts here are different. The deceased was a married woman, emancipated, without children, and was living with and was supported by her husband. It was said by this court in *Diebold* v. *Sharp, supra*: "The mere existence of the relationship of parent or brother or sister to the intestate, in connection with her capacity to earn for herself a certain amount weekly, and the probability that she would have lived for a certain period, cannot furnish a reasonable basis for the calculation of pecuniary loss to her kindred. Whatever may be said of an action for the benefit of relatives dependent as a wife or child, the assessment of damages in a case like the one before us must proceed, not merely upon the pecuniary ability of the deceased, but rather upon the anticipations of pecuniary benefit which the surviving next of kin are shown to have *reasonable ground to indulge.*"

The Supreme Court in *Louisville, etc., R. W. Co.* v. *Wright, supra,* said: "Here the deceased was under no legal obligation to support the next of kin for whose benefit the suit is prosecuted. In the course of nature, it is not probable that they would have survived him and thus become his heirs; nor can we presume that he would not have married. Their pecuniary loss, therefore, is not such as would have been sustained by a widow and children."

Upon the facts as found in this case, the verdict for $2,750.00 strikes us at "first blush" as being excessive. The only evidence upon the subject is to the effect that the deceased's earnings were contributed to the mother and were worth to her the sum of $2.50 per week. It was found by the jury that the mother's expectancy of life was a fraction over twenty-eight years. Now if we concede that deceased would, during the whole life of her mother, contribute $2.50 per week, or approximately $125.00 per year for twenty-eight years, we also know that $2,083.32 will purchase an annuity of $125.00 upon the life of a person of the age of the mother of deceased. Even this would not be a fair way to arrive at the amount of damage done by the wrongful killing of deceased, because the amount of money which would purchase an annuity during the expectancy of life of the next of kin of deceased equal to the annual contribution to their support by deceased would be an excessive judgment. It would necessarily be cut down and greatly lessened by the contingencies, which this case presents. The facts that deceased was a married woman, that she might and probably would bear children, that she was under no legal obligation to contribute anything to the support of her next of kin, that what she did contribute was earned by her leaving her home and working out by the week, that her husband might require

her services at home; that her infant brother and sister would in a few years be in a situation to support their mother—all these conditions would go to lessen a fixed amount such as would be required to purchase an annuity equal to the annual contributions of deceased to her next of kin.   Juries are not warranted in giving damages based upon their fancy, nor are they warranted in assessing damages based upon visionary estimates of probabilities or chances.  Matters purely of conjecture, it seems to us, are too vague to enter into an estimate of damages merely compensatory as they must be in this case.

In the case of *St. Louis, etc., R. W. Co.* v. *Robbins*, 57 Ark. 377, 21 S. W. 886, the proof was that the deceased was a young married man, twenty-nine years old, and that his expectation of life was thirty-five years; that he earned and contributed to the support of his family the sum of $540.00 per year.   It was held that a verdict of $7,500.00 was so excessive as to show that the jury had either adopted an incorrect method of calculating the damages, or was misled by sympathy.   It was said in the opinion that no other conclusion could be reached by the court, knowing that an annuity of $540.00 could be purchased for thirty-five years for the sum of $5,692.68.   And, upon the same principle, in the case of *Rose* v. *Des Moines, etc., R. R. Co.*, 39 Ia. 246, it was held that a judgment for $10,000.00 was excessive when the decedent was a man twenty-four years old, of industrious and temperate habits, whose net earnings amounted to $263.00 per year, and the judgment was affirmed only upon condition of a remittitur of $5,000.00.

The judgment in the case at bar is so clearly excessive under the facts found, as to show that the jury must have rendered it through partiality or been misled by sympathy.   It is not necessary that we express

an opinion as to what would not be an excessive judgment in a case presenting the contingencies that this case presents.

The lower court erred in overruling the motion for a new trial. Other alleged errors of the lower court are presented by the record and discussed in the argument of appellant's counsel. It does not become necessary to discuss any other question in the decision of the cause. The judgment of the lower court is reversed, with instructions to sustain appellant's motion for a new trial.