# THE LOUISVILLE AND NASHVILLE RAILROAD COMPANY v. KEMPER.

[No. 18,554. Filed May 23, 1899. Rehearing denied Dec. 19, 1899.]

NEGLIGENCE.—*Master and Servant.*—*Railroads.*—Where a railroad company permitted a portion of its road-bed underneath the cross-ties to become soft by reason of the flow of water from a hydrant of the company, so that the rails and cross-ties would sink down when the weight of a car was placed upon them, such condition not being obvious or apparent, but being known to the master, or by the exercise of ordinary care discoverable by him, such neglect constituted a breach of the duty of the company to keep and maintain the roadway in a sound and safe condition for the protection and security of its employes. *pp. 620-625.*

SAME.—*Complaint.* — *Master and Servant.* — *Railroads.* — A complaint in an action for personal injuries by an employe of a railroad company, alleging that defendant had allowed that portion of its tracks in front of the freight depot to become in a dangerous condition by permitting a large volume of water from a hydrant to flow over and under the tracks, causing the earth under the tracks to become soft and yielding, and that while plaintiff was placing a car in position, preparatory to coupling same, the car in the rear came over the defective track, making a depression in the track, by reason of the defective condition thereof, which caused plaintiff's foot resting thereon to slip, and before he could remove his foot, without any neglect on his part, ran over same, cutting and mangling it, is sufficient against demurrer. *pp. 620-625.*

PRACTICE.—*Interrogatories to Jury.*—*Signature of Foreman.*—The statute does not require that the foreman shall sign his name to each answer to the interrogatories propounded to the jury, although this is the better practice. *p. 625.*

SAME.—*Interrogatories to Jury.*—*Failure to Sign.*—Where no objection is made to the failure of the foreman to sign each separate answer to interrogatories propounded to the jury before their discharge, it is too late to urge the objection for the first time on appeal. *pp. 625, 626.*

VERDICT.—*Interrogatories to Jury.*—Answers to interrogatories cannot be aided by intendment, as the intendments will be made in favor of the general verdict. *p. 627.*

APPEAL AND ERROR.—*Evidence.*—The Supreme Court will not disturb the verdict on the evidence, where there is evidence strongly tending to sustain it. *p. 629.*

Louisville, etc., R. Co. v. Kemper.

INSTRUCTIONS.—*Invasion of Province of Jury.*—An instruction in the trial of an action for personal injuries caused by the alleged defective condition of defendant's railroad tracks, that the presence of cinders upon the surface of the ground alongside the track would not indicate to a person of ordinary intelligence that the track had been made solid so that it would not sink, was properly refused, as it was for the jury to say what inferences of fact should be made from the evidence on such point. *pp. 629-630.*

EVIDENCE.—*Negligence.—Personal Injuries.*—In an action against a railroad company by an employe for personal injuries caused by the defective condition of defendant's railroad tracks, proof that no other person had ever been injured by reason of such defect at the place mentioned was properly excluded. *p. 630.*

JUDGMENTS.—*Excessive Damages.—Personal Injuries.*—A judgment in an action for personal injuries will not be reversed on the ground that excessive damages were awarded, unless it appears that the jury must have acted from prejudice, partiality, or corruption. *p. 630.*

From the Warrick Circuit Court. *Affirmed.*

*A. Gilchrist* and *C. A. DeBruler,* for appellant.

*A. Dyer, G. V. Menzies, W. A. Cullop* and *C. B. Kessinger,* for appellee.

DOWLING, J.—This case comes here for the second time. On the first appeal the judgment was reversed for the error of the trial court in overruling a demurrer to the complaint. *Louisville, etc., R. Co.* v. *Kemper,* 147 Ind. 561. The complaint was afterwards amended, issues were formed, and, upon the trial of the cause, there was a judgment in favor of the appellee. The railroad company again appeals.

The errors assigned are, (1) the overruling of the demurrer to the *first* paragraph of the complaint; (2) the overruling of the demurrer to the *second* paragraph of the complaint; (3) the overruling of appellant's motion for judgment in its favor on the interrogatories and answers thereto returned by the jury with their verdict; and (4) the overruling of appellant's motion for a new trial.

The objections to the complaint as amended are, in substance, the same as those successfully urged against the complaint originally filed. They are directed chiefly against

those parts of the pleading which describe the negligent acts and omissions of the appellant, the injurious consequences of those acts and omissions to the appellee, and which negative knowledge of the defective and unsafe condition of the railroad track on the part of the latter.

After the formal allegations concerning the corporate character and the business of appellant, and the employment of appellee, the first paragraph of the complaint proceeds:

"That by the terms of plaintiff's employment it was his duty to handle freight in and about said depot, and to transfer freight from loaded cars into said depot and from said depot into said cars, and in the discharge of said employment it was the duty of the plaintiff to move, and assist in moving, by pushing and hauling the same, freight cars along said track to and from said freight depot.

"That, heretofore, to wit, on the 29th day of June, 1894, and for a long time prior thereto, the defendant had negligently permitted that part of its said track, which ran along and in front of said freight depot, to become defective, and in a dangerous condition, by permitting a large volume of water to flow over and under said track to a point opposite the receiving door of said freight depot, which caused the earth on which the ties and rails were laid to become soft and yielding, and liable to sink when any considerable weight was drawn or hauled over said track.

"That said defective condition of the track, on the date aforesaid, was known to the defendant, and unknown to the plaintiff.

"That, on the date aforesaid, the plaintiff at or near a point on said track in front of the receiving door of said depot, attempted, in the discharge of his duty, to couple two (2) freight cars but, owing to the defective coupling link of the rear car, failed and was unable to do so. That as the rear freight car of the two (2), which the plaintiff was at the time attempting to couple, came in contact with the drawhead of the forward car, on failing to couple with it, it rebounded

or kicked back. That immediately after attempting to couple the said two cars, the plaintiff, in the proper discharge of his duty, placed his left shoulder on the rear of the car in front of him for the purpose of pushing said car forward in front of the receiving door of said depot, with both feet outside of the rail, but his right foot next to the rail, for the purpose of pushing said car as aforesaid. That, while in this attitude, the freight car immediately in the rear of him came forward over the defective portion of the said track, by reason of the defective condition of the same, and by its weight suddenly caused a great depression in the track, and caused plaintiff's foot which was next to, and adjoining the track, suddenly, and without any neglect on the part of the plaintiff, to slip upon and over the rail. That, before the plaintiff could remove his foot from the rail, the forward truck of the rear car suddenly, and without any fault or negligence on the part of the plaintiff, ran on, and over his right foot, cutting and mangling the same, and a large part thereof was thereby crushed, removed and destroyed."

It is probably true, as contended for by counsel for appellant, that the defective condition of the coupling link had nothing to do with the injury to appellee, and that, under the averments of this paragraph, there could be no recovery on account of such defective coupling link. *Hannigan* v. *Lehigh, etc., R. Co.*, 157 N. Y. 244, 51 N. E. 992.

But the recital of the fact of the attempt to couple the two cars, and its failure because of such defective link, was a proper part of the narrative of the circumstances which resulted in the injury to appellee, and at least rendered that narrative more easily intelligible.

The obligation of the master to furnish to the servant a reasonably safe place in which to work, if the character of the employment makes it possible for him to do so, and the duty of the master to supply the servant with reasonably sound and safe machinery and appliances with which to perform his labor, with the further and continuing duty to

exercise ordinary care to keep such place safe, and such machinery and appliances sound and safe, are universally recognized, and the rules on the subject are of general application. *Brazil Coal Co.* v. *Young*, 117 Ind. 520; *Louisville, etc., R. Co.* v. *Graham, Adm.*, 124 Ind. 89; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Baltimore, etc., R. Co.* v. *Rowan*, 104 Ind. 88; *Krueger, Adm.*, v. *Louisville, etc., R. Co.*, 111 Ind. 51; *Pennsylvania Co.* v. *Brush, Adm.*, 130 Ind. 347; *Pennsylvania Co.* v. *Sears*, 136 Ind. 460.

The work of handling and moving cars on railroad tracks, in the manner described in the complaint, is, at all times, and under the most favorable conditions, difficult and, to some extent at least, dangerous. The safety of the men employed depends largely on the soundness and stability of the track, its rails, cross-ties, and road-bed, and the proper and sound equipment of cars and other rolling stock. Imperfections in any of these invite disaster, and are a constant menace to the life and safety of every employe.

The fact that a portion of a railroad bed, underneath the cross-ties, had been permitted to become soaked and soft by reason of the flow of water from a hydrant of the company, so that the rails and cross-ties would sink down when the weight of a car was placed upon them, this dangerous condition not being obvious and apparent, but being known to the master, or by the exercise of ordinary care discoverable by him, constituted a breach of the duty of the company to keep and maintain the roadway in a sound and safe condition for the protection and security of its employes.

In the case of *Indianapolis, etc., R. Co.* v. *Love*, 10 Ind. 554, in speaking of the duty of the master to furnish a safe roadway, and to inform the servant of unusual dangers, it is said: "If a defect existed in the road which was known to the company, but which it was impossible for them to immediately remove or remedy, and in consequence thereof the road was unsafe but not impassable, and yet they should place an employe upon the road, and suffer him, in ignorance

of said defect, to attempt to operate it, an injury should thereby result to him, certainly there would be a liability."

Where such defects exist, and where they are not plain and obvious, or known to the employes, but are known to the master, or are discoverable by him by the exercise of ordinary care, the master can exonerate himself only by repairing them at once, or by notifying his servants of their existence and of the increased danger.

We think it sufficiently appears from the averments of the first paragraph of the complaint that the railroad of appellant, at the point in front of the warehouse was, at the time of the accident, defective and dangerous; that the defect was known to appellant; that it was of such a character as not to be obvious and apparent; and that appellee had no knowledge of its existence. It is expressly stated that the defect was in the foundation on which the cross-ties rested, and nothing in the pleading indicates that this defect could be discovered by a superficial examination of the track.

The accident to appellee was a very natural consequence of the condition of the road-bed. He was engaged in pushing a freight car toward the warehouse. His left shoulder was pressed against the end of the car, and his weight was thrown upon his feet which were near to the rail. While he was so occupied and engrossed with his task, the rails and cross-ties, unable to sustain the weight of the rear car, suddenly sunk down some two or three inches, thereby removing the support the rail gave to appellee's footing, his foot slipped upon the sunken rail, and the wheels of the rear car ran upon and crushed it.

In this occurrence, as described in the first paragraph, we find no element of negligence, or lack of care on the part of the appellee.

The condition of the track was such that an accident of some kind might reasonably have been anticipated. The mischief was such as ought to have been foreseen and, if the matters stated in the pleading were true, the company was

negligent in failing to repair the defect in the roadway, and provide against such an occurrence. It is not necessary that the master should have reason to anticipate a particular kind of accident, but the inquiry is, had he reason to expect the occurrence of an accident of any kind affecting the lives or limbs of his servants at that place, and because of this defect in the road? In our opinion, the paragraph under examination shows that the injury was the natural and probable consequence of the negligence of the company in suffering its roadway to be in the condition described, and that, in the light of the attending circumstances, the dangers to its employes ought to have been foreseen and provided against.

There is nothing in the paragraph which authorizes us to say that appellee assumed the risk of the defective track. Knowledge of the existence of the defect is expressly negatived in the paragraph, and the special averments, descriptive of it, are not inconsistent with such denial. Neither can such knowledge be inferred from the allegations that "at the time of the grievances, hereinafter mentioned, plaintiff was an employe of the defendant for hire and reward. * * * That heretofore, to wit, on the 29th day of June, 1894, and for a long time prior thereto, the defendant had negligently permitted, etc." "The time of the grievances" mentioned was the date of the injury, and not the period covered by the employment of the appellee. It cannot fairly be inferred from the statements of the pleading that appellee had, at any time previous to the accident, pushed cars over the defective track, or that he had been employed at that point. Upon a very careful review of the first paragraph, we are satisfied that it is sufficient in form and substance, and that the demurrer to it was properly overruled.

The second paragraph of the complaint as amended is much more full and specific in its averments than the first. In addition to the facts contained in the first, it is alleged, in substance, that the earth between the cross-ties appeared to be firm and solid, and in good and safe condition; that the

earth between said ties was not of the soft, spongy and pliable kind under the ties; that the condition of the road-bed under the ties was concealed by appellant by putting cinders and ashes along the track within forty-eight hours prior to the 29th day of June, 1894—the day appellee was hurt—so as to cover it up and prevent the plaintiff, or any other person, from discovering the condition of the earth under the ties upon which the rails rested over which the said cars were to pass.

The second paragraph, like the first, is essentially different from the complaint, which was held insufficient on the former appeal. Its objectionable features have been removed, and new and material averments have been added. It describes an actionable breach of duty by the railroad company. Its direct averments that appellee was not in fault, and that he had no previous knowledge of the existence of the defect, are not inconsistent with the specific allegations as to his employment and means of knowledge. We think it clearly appears that the injury sustained was the direct and natural result of the default of the company in not maintaining its track in a sound and safe condition. It follows that no error was committed by the trial court in overruling the demurrer to the second paragraph of the complaint.

In the next place, the appellant insists that the court erred in refusing to render judgment in its favor upon the answers to the questions of fact submitted to the jury, and returned with the general verdict.

Counsel for appellee object to the consideration of this question, for the reason that the foreman of the jury did not sign each separate answer, but affixed his signature at the end of the paper. The statute does not say that, when interrogatories are to be answered by the jury, the foreman shall sign his name to each answer, although this is certainly the better practice. *Sage* v. *Brown*, 34 Ind. 464. But, whatever the rule may be, where no objection is made to the

failure of the foreman to sign each separate answer before the discharge of the jury, we think it is too late to urge that objection for the first time in this court on appeal.

Is the special finding of facts inconsistent with the general verdict? It is affirmed by counsel for the railroad company that the answers of the jury to the questions of fact show that the rear car did not, upon striking the forward car, bound backward, and then return, thereby injuring the appellee; that the cinders were above the top of the rail, and therefore had nothing to do with the slipping of appellee's foot upon or across the rail; and that appellee had full knowledge of the unsafe condition of the track and, with such knowledge, assumed the risk of working where he did.

The questions and answers relied upon to sustain this view, and set out here in the order in which they are arranged in the brief for appellant, are these: "25. At the time the moving car came against the one that was standing still, did the weight of the two cars cause the track to sink? No. 26. How far did the weight of the two cars cause the track to sink? Rear car caused track to sink two, or three inches. 27. Did the sinking cause the track to slope down toward the car that was standing still? Yes. 28. When the moving car struck the one standing still, did the moving car bound back from it, and up the slope it had descended? No. 29. How far did it bound back? ———. 30. Did the car after bounding back come forward again of its own accord? No. 31. Before plaintiff began pushing against the forward car, had he given up his attempt to make the coupling of the two cars? Yes. 32. Did not the plaintiff, after attempting to make the coupling of the two cars, give up that attempt and begin pushing against the forward car? Yes. 33. What was the weight of the car that was pushed against the other car? About 40,000 pounds. 34. How far was it pushed before it struck the forward car? About six or eight feet. 36.

Were not the cinders, upon which the plaintiff was standing where he pushed the car, on a level with the top of the rail? No; above.   8.   Had there not been the same condition as to the wet soil under this track at this place, and as to the track settling below its ordinary grade, when a loaded car was upon it, for at least a year prior to the time plaintiff received the injury for which he sues?   Yes.   18.   Had not that track at that place been in substantially the same condition as to sinking when loaded cars were on it for at least four (4) years that it was at the time plaintiff received injury for which he sues?   Yes.   19.   Had not the same kind of work, which the plaintiff and other employes of defendant were then doing, been performed by such employes at the same place, and on the same track, all said time?   Yes.   4. Was not the plaintiff engaged at all times during his service with the defendant in loading or unloading or moving cars at the place where he received the injury for which he sues in this action?   No.   11.   At the time the plaintiff received the injuries, for which he sues in this action, was the condition of the cinders open to the observation of any one passing over them, or standing on them?   Yes.   12. What, if anything, was there to prevent any person passing over those cinders at that time, or standing on them, from seeing the condition of those cinders?   Nothing."

It is settled in this State that the general verdict determines all the material questions in favor of the appellee, and that unless the facts stated in the answers to interrogatories are so clearly antagonistic to the decision embodied in the general verdict as to be irreconcilable with it, the judgment must stand.   The answers to interrogatories cannot be aided by intendment, for the rule is that intendments will be made in favor of the general verdict, and not in favor of answers to special interrogatories.   *Town of Poseyville* v. *Lewis*, 126 Ind. 80, and cases cited; *Kirkpatrick* v. *Reeves*, 121 Ind. 280.

We are unable to find in the answers to the interrogatories in this case such a conflict with the general verdict as requires that the general verdict shall be set aside.

The variance between the complaint and the answers to the questions of fact as to the rebounding of the rear car when it came in contact with the forward car is unimportant. The material fact was that, immediately after the cars came together, a space was opened between them into which appellee stepped, putting his left shoulder against the forward car. It made no difference whether the rear car rebounded, or the forward car was suddenly driven forward. The rear car moved forward, and appellee's foot slipped upon the rail and was injured.

Nor do we think the special findings of fact charge the appellee with knowledge of the condition of the track at the place of the accident. The jury were not asked whether the appellee knew that the track was defective, and liable to sink down under the weight of a loaded car, but an attempt was made to elicit facts from which such knowledge could be inferred. The legal effect of the general verdict is that the appellee had not knowledge of the defect, and that he was without fault. Ignorance of the condition of the track is entirely consistent with the special findings as to the length of time the appellee had been employed, the nature of his work, and the character of the defect in the track. So, too, whether the cinders were above the top of the rail, on the same level, or below the rail, if the track, under pressure, suddenly sunk two or three inches while the appellee was bracing his foot near the rail, or against it, the result would naturally be the slipping of his foot upon or across the rail. The special findings by no means make it apparent that the defect in the track was open and obvious; and the deposit of cinders by appellant at the place where the track was out of repair, a few days before the accident, may have had the effect of creating an appearance of security, or of concealing the actual condition of the roadway, and thereby deceiving

the appellee; and by their general verdict, the jury so find. In our opinion, the trial court was fully justified in overruling the appellant's motion for judgment in its favor on the special findings of fact.

Finally, it is insisted that the motion for a new trial should have been sustained. The grounds of that motion were, that the verdict was not sustained by sufficient evidence; that the court erred in its refusal to give instructions numbered twelve, six and seven; that appellant should have been allowed to prove that no other person had been hurt by reason of the sinking of the track; and that the damages were excessive.

The witnesses were few in number, and the range of the evidence was limited. The appellee testified, and gave his account of the accident. He denied all knowledge of the defect in the track at the time he was injured, and stated that he thought the cinders had been put there so that the track would not sink down when loaded cars came on it. There is evidence strongly tending to sustain the verdict and, under the well established rule in such cases, we cannot disturb the judgment.

Instruction number twelve, asked for by appellant, was a peremptory direction to return a verdict for the appellant on the ground that there was a total failure of evidence on the part of the appellee. This instruction was properly refused. Instructions numbered six and seven advised the jury, as *matter of law*, that the act of placing cinders upon the surface of the ground alongside of the track, and of the rails of the track, or the mere presence of cinders in such position, would not of themselves indicate to a person of ordinary intelligence that the track and bed of the track had been made solid so that it would not sink. The jury were the exclusive judges of the facts, and it was for them to say what inferences of fact should be made from the evidence given on this point. Whether a person of ordinary intelligence would or would not infer from the presence of cinders

along a railroad that repairs had been made upon it, was solely for the jury to determine. There was no error in refusing to give these instructions.

The evidence offered by appellant to prove that no other person had ever been injured in consequence of the sinking of the track at the place mentioned in the complaint was properly excluded. Proof of immunity of other persons from injury would have afforded no sufficient basis for a presumption that the track was sound and safe. 16 Am. & Eng. Ency. of Law p. 457, and cases cited.

We are asked to reverse the judgment on the ground that the damages are excessive. The question of damages was within the proper and peculiar province of the jury. The law imposed upon them the duty of assessing their amount. It was for them to say, under all the circumstances of the case, what would be an adequate compensation for the injury they found the appellee had sustained. The rule in such cases is clearly stated by Chancellor Kent, in these words: "Unless the damages are so outrageous as to strike every one with the enormity and injustice of them, so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, the court cannot, consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries." *Coleman* v. *Southwick*, 9 Johns. 44, 45; *Ohio, etc., R. Co.* v. *Collarn*, 73 Ind. 261, 38 Am. Rep. 134; *Erwin* v. *Garner*, 108 Ind. 488.

Finding no error in the record, the judgment is affirmed.