HINES, DIRECTOR GENERAL OF RAILROADS, *v.*
NICHOLS, ADMINISTRATOR.

[No. 10,660. Filed March 8, 1921. Rehearing denied June 28, 1921. Transfer denied October 12, 1921.]

1. APPEAL.—*Review.*—*Instructions.*—*Invited Error.*—Where the error complained of in an instruction was invited by appellant in requesting the court to give another instruction tendered by him, such error is not ground for reversal. p. 448.

2. ELECTRICITY.—*Instruction Stating that Electricity is a Dangerous Element.*—That electricty is a dangerous element is a fact so firmly established and so well known that to so assume and state in an instruction, where dangers arising from its use are involved, is not error. p. 449,

3. MASTER AND SERVANT.—*Injuries to Servant.—Use of Electricity.—Care Required.*—That electricity is a dangerous element does not require that a master use more than ordinary care for the protection of his servants from dangers arising therefrom; but the *quantum* of such care, made necessary by reason of the presence of such dangerous element, is a fact to be considered in determining whether a master has discharged his duty toward his servant in a particular instance.   p. 449.

4. MASTER AND SERVANT.—*Injuries to Servant.—Dangers from Electricity.—Instructions.—Care Required.*—In an action to recover for the death of a lineman by electrocution, an instruction which, while informing the jury that greater care must be exercised to avoid danger, where an electrical current is present, *held* not erroneous, where the instruction considered in its entirety clearly limited the care required to ordinary care.   p. 449.

5. APPEAL.—*Review.—Harmless Error.—Instruction Failing to Limit Jury to Consideration of Facts in Evidence.*—In an action for wrongful death, an instruction stating that, in the event of the jury finding for plaintiff, decedent's father and administrator, it would have a right to consider the probable expectancy of life of plaintiff and his wife, as bearing upon the question of how long they might reasonably have expected financial assistance from decedent, who was unmarried, *held* not harmful, though not limiting such consideration to the facts disclosed by the evidence where the court, in the preceding part of the instruction, called the jury's attention to the evidence admitted with reference to the expectancies of life of plaintiff, his wife and decedent, and stated that its purpose was to aid the jury in determining the amount of recovery, if finding for the plaintiff, and in another instruction stated that it was the jury's "duty to find the facts as shown by the evidence."   p. 451.

6. DEATH.— *Wrongful Death.—Damages.— Presumption as to Next of Kin.*—In an action for wrongful death, the damages recoverable are limited to the pecuniary loss sustained by the next of kin, and where there is no legal obligation resting upon deceased to contribute to next of kin, damages will not be presumed, but must be affirmatively proven.   p. 451.

7. DEATH.—*Wrongful Death.— Damages.— Elements.— Anticipated Pecuniary Benefits.*—In actions for wrongful death, where decedent was under no legal obligation to support the next of kin for whose benefit a suit is brought, the assessment of damages must proceed, not merely upon the pecuniary ability of the decedent, but rather upon the anticipations of pecuniary benefit, which such next of kin are shown to have reasonable ground to indulge.   p. 452.

8. DEATH.—*Wrongful Death.—Damages.—Basis of Award to Next of Kin.*—In an action for wrongful death, where decedent was under no legal obligation to support the next of kin for whose benefit a suit is brought, the amount of damages recoverable should be predicated upon the conditions existing, and contributions made, and being made, by decedent to such next of kin at and prior to his death as shown by the evidence, but such contributions are not limited to those made in money, as they may include personal services. p. 452.

9. DEATH.—*Wrongful Death.—Excessive Damages.*—A judgment for $4,000 for the death of a lineman, who was unmarried, eighteen years of age and left a father, mother and sister surviving him, *held* not excessive, in view of the fact that his monthly wages were from $60 to $70, that he contributed $10 to $20 a month to his mother, and that he gave her, from time to time articles of clothing and household furnishings and helped her by services in the household. pp. 452, 454.

10. APPEAL.—*Excessive Damages.—Review.*—For the court on appeal to hold that damages for wrongful death are excessive, it is not sufficient that in the court's judgment they are too high or that it would have given a less amount had the matter been submitted to it as an original question but, to justify a reversal on such ground, the amount assessed must appear to be so outrageous as to impress the court at "first blush" with its enormity. p. 453.

From Morgan Circuit Court; *Alfred M. Bain,* Judge.

Action by Harry B. Nichols, administrator of the estate of Bruce C. Nichols, deceased, against Walker D. Hines, Director General of Railroads. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Samuel O. Pickens, Charles W. Moores, R. F. Davidson,* and *Owen Pickens,* for appellant.

*Homer Elliot,* for appellee.

BATMAN, J.—This is an action by appellee against appellant for damages arising out of the death of appellee's decedent, which occurred while he was working for appellant as a lineman, stringing wires in his railroad yards in the city of Indianapolis, by reason of an electric shock received from a high-voltage wire with which he came in contact. The complaint is in a single

paragraph, and alleges, in addition to the fact of his employment, the conditions surrounding his work, the death of said decedent, and the acts of negligence on the part of appellant, which were the proximate cause thereof; that appellant was engaged in intrastate commerce, at the time of the occurrence in question, and prior thereto had rejected the Act of March 8, 1915, commonly known as the "Indiana Workmen's Compensation Act," (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918) and had given due notice thereof, which rejection was still in force at such time; that said decedent was eighteen years of age at the time of his death, and had never at any time rejected said act; that he was in good health, capable of earning and did earn $75 per month, and had previously been emancipated; that he left surviving him, as his next of kin and as his sole heirs at law, his father Harry B. Nichols, his mother Rose Lee Nichols, and his sister Ailene Galloway, all of whom, by reason of his death, suffered a pecuniary loss in the sum of $10,000. The cause was put at issue by a general denial, and afterwards submitted to a jury for trial, resulting in a verdict in favor of appellee for $6,000. Appellant's motion for a new trial was followed by appellee's offer to remit $2,000 from the amount of the verdict. Said motion was then overruled, and judgment was rendered on the verdict for $4,000. Appellant is now prosecuting this appeal on an assignment of errors, calling in question the action of the court in overruling his said motion.

The only reasons presented by appellant in support of its contention, that the court erred in overruling his motion for a new trial, are based on the action of the court in giving instructions Nos. 1, 2, 3 and 7, and on a claim that the damages assessed by the jury are excessive. There was no error in giving said instruction No. 1, as the error of which complaint

is made, was clearly invited by appellant in requesting the court to give instruction No. 2, tendered by him. *Indianapolis, etc., Traction Co.* v. *Senour, Admx.* (1919), 71 Ind. App. 10, 122 N. E. 772 and cases cited.

Appellant's objection to instruction No. 2 is based on a claim, that it informed the jury that electricity is a dangerous element, and because of that fact it was his duty to exercise more than ordinary care for the safety of appellee's decedent. That electricity is a dangerous element is a fact so firmly established and well known that to so assume and state in an instruction, where dangers arising from its use are involved, is not error. Such fact, however, does not require that a master use more than ordinary care for the protection of his servants from dangers arising therefrom. *Union Traction Co.* v. *Berry* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737. While ordinary care still remains the measure of a master's duty toward his servant, notwithstanding the presence of such a dangerous element as an electric current, the *quantum* of such care, made necessary by reason of the presence of such dangerous element, is a fact to be considered in determining whether a master has discharged his duty toward his servant in a particular instance. Thus it has been said: "Ordinary care ebbs and flows with the danger to be fairly anticipated by a man of reasonable prudence from the circumstances and conditions involved in each case." *Louisville, etc., Traction Co.* v. *Walker* (1912), 177 Ind. 38, 97 N. E. 151. The instruction under consideration is well within the rules stated. While it informed the jury that greater care must be exercised to avoid danger, where an electrical current is present, than would be required where such a dangerous element was absent, still in the same instruction,

Vol. 76—29

it clearly limited the care required under such circumstances to ordinary care, by informing the jury that *"negligence,* as the word is meant in these instructions, simply means the want of due care, or such care as ordinarily prudent persons would exercise under like or similar circumstances, * * * No hard or fast rule can be laid down, that will fit every case, as the measure of care to be exercised must depend upon the circumstances. * * * So having in mind all the conditions, as you find from the evidence that they existed, the question for you to determine is, did the defendant under the circumstances, use due care." From the context it is apparent, that the word "measure" was used in the sense of *"quantum,"* and that "due care" as last used, was used in the same sense as first stated, viz: "such care as ordinarily prudent persons would exercise under like or similar circumstances." When these terms are so considered, we are of the opinion that said instruction correctly limits the care, which appellant was required to use for the safety of appellee's decedent to ordinary care, and that the court did not err in giving the same.

Appellant contends that instruction No. 3, is erroneous, as it invaded the province of the jury: (1) By stating that the condition arising from the arrangement of the wires on the pole, was a dangerous one, and (2) by stating that appellee was entitled to recover, if the decedent met his death by reason of such dangerous condition. An examination of said instruction discloses, that it does not assume that the arrangement of the wires on the pole created a dangerous condition, as appellee's right of recovery is expressly conditioned on the fact, that the jury should so find. Any error arising from an assumption that such dangerous condition, if found, was the result of appellant's negligence, and therefore entitled appellee to a recovery, was

clearly invited by instruction No. 2 tendered by it, with a request that it be given.

Appellant's objection to instruction No. 7 is based on the fact, that it is stated therein, that in the event the jury found for appellee, it would have a right to consider the probable expectancy of life of appellee and his wife, as bearing upon the question as to how long they might reasonably have expected financial assistance from the decedent, without limiting such consideration to the facts disclosed by the evidence. That the jury should have been misled by any such omission, is a very remote possibility. However, we observe that the court, in the preceding part of said instruction, called the jury's attention to the evidence admitted with reference to the expectancies of life of appellee, his wife and the decedent, and stated that its purpose was to aid the jury in determining the amount of appellee's recovery, if they found in his favor. This fact, supplemented by the statement in a preceding instruction given the jury, that "it is your duty to find the facts as shown by the evidence," clearly shows that there was no reversible error in giving said instruction, as appellant was not harmed by a failure to limit the same as he contends.

Appellant's chief contention, however, is based on the ground that the damages assessed by the jury are excessive. It will be observed that pending appellant's motion for a new trial, appellee offered to remit from the amount of the verdict of $6,000, the sum of $2,000, and thereupon the motion for a new trial was overruled, and the court rendered judgment on the verdict in favor of appellee for $4,000. This brings before us for consideration the question, as to whether the damages assessed, notwithstanding such remittitur, are still excessive. We agree with appellant, that in actions of this kind the damages recover-

able are limited to the pecuniary loss sustained by the next of kin, and since there is no legal obligation resting upon the deceased to contribute to such next of kin, damages will not be presumed, but must be affirmatively proven. *Commercial Club, etc.* v. *Hilliker* (1898), 20 Ind. App. 239, 50 N. E. 578. Also that the assessment of damages must proceed, not merely upon the pecuniary ability of the decedent, but rather upon the anticipations of pecuniary benefit, which the surviving next of kin are shown to have reasonable ground to indulge. *Chicago, etc., R. Co.* v. *Vester* (1911), 47 Ind. App. 141, 93 N. E. 1039. And further, that the amount of damages recoverable should be predicated upon the conditions existing, and the contributions made, and being made, by the decedent to such next of kin, at and prior to his death, as shown by the evidence in the case. *Chicago, etc., R. Co.* v. *Vester, supra.* Such contributions, however, are not limited to those made in money, but may include such personal services, as the evidence shows were rendered such next of kin by the decedent. *Valparaiso Lighting Co.* v. *Tyler* (1911), 177 Ind. 278, 96 N. E. 768; *Smith* v. *Michigan Cent. R. Co.* (1905), 35 Ind. App. 188, 73 N. E. 928; *Henry* v. *Prendergast* (1911), 51 Ind. App. 43, 94 N. E. 1015. With these settled rules in mind, let us examine the facts, which the evidence in the instant case tends to establish. It appears that appellee's decedent was an intelligent young man in good health, almost eighteen years of age, and was capable of earning good wages; that he was industrious, and had been employed for the greater portion of the time since he was fourteen years of age; that he was unmarried, economical in the use of his earnings, and kind and considerate toward his parents; that soon after he commenced to earn wages, he began to make contributions to his mother,

and as his wages increased he made increased contributions to her; that for the last two or three years prior to his death he had been receiving from $60 to $70 a month as wages, and would contribute to his mother therefrom, sums ranging from $10 to $20 each month; that besides such contributions he gave her, from time to time, articles of clothing and household furnishings; that he had a deep affection for his mother, and rendered her service in many ways, as shown by the following statement of her evidence appearing in appellant's brief: "When he would be around the house he always assisted me with my housework. He was as handy as any woman could be about the house. He could go in the kitchen and get as nice a meal as I could, and as quick. He could sweep and clean up the house just as good as any woman. He always did work of that kind for me when I was sick or tired. He had been helping me that way ever since he was a little boy. He was always good to help about the house; it seemed he liked work of that kind. I never had to urge him or insist on his doing work of that kind. He did everything that there was to do; he even helped me wash, and helped me with the dishes or anything. He swept and dusted, and made beds. I do not think there was anything in the ordinary housework that I did myself which he did not do." There was also evidence showing that the decedent was emancipated, and that his expectancy of life was 42.87 years, and that of his father and mother was 26.97 years, and 27.61 years respectively.

In order to hold that the damages assessed are excessive, it is not sufficient to say, that in our opinion they are too high, and that we would have given 10. a less amount had the matter been submitted to us as an original question. In order to justify us in reversing the judgment on such ground, the

amount of damages assessed must appear to be so outrageous, as to impress the court at "first blush" with its enormity. *Louisville, etc., R. Co.* v. *Kemper* (1899), 153 Ind. 618, 53 N. E. 931. While it may be that the amount of damages approved by the trial court, in overruling appellant's motion for a new trial, after he had considered the evidence anew, approached the border line, we cannot say, under the rules by which we are bound, that such amount is excessive. The expectancy of life of the decedent's mother was 27.61 years, while his own expectancy was 15.26 years beyond that period. The undisputed evidence as to the relationship between the decedent and his mother was such as to elicit admiration, and to be strongly pursuasive that the contributions of money, sundry articles and services, shown by the evidence, would continue throughout the remainder of her life. Calculations, based on the facts disclosed by the evidence, fail to convince us that the trial court erred in giving the amount of damages, for which judgment was rendered, its approval. Appellant, in support of his contention, has cited us to certain cases as precedents, but they cannot be accepted as controlling. In fact, each case of this character is so largely dependent upon its own circumstances, that the conclusion reached by this, or other courts, in cases of like character, can have only a limited influence in the determination of any given case. We find no reversible error in the record. Judgment affirmed.