CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILROAD, INC., COMMONLY KNOWN AS THE MONON RAILROAD COMPANY *v.* THELMA FREEMAN, AS ADMINISTRATOR.

[No. 1171A240. Filed June 22, 1972. Rehearing denied August 10, 1972. Transfer denied December 18, 1972.]

*James R. Cotner*, Bloomington, for appellant.

*Vernon J. Petri, Petri & Holt*, of Spencer, *David S. McCrea, McCrea & McCrea*, of Bloomington, for appellee.

ROBERTSON, P.J.—Virgil Freeman was struck and killed in his automobile by one of defendant-appellant's (Monon) trains. In a trial by jury his widow, the plaintiff-appellee (Freeman) received a verdict and judgment of $105,000.

Monon presents two errors for our consideration. The first is the giving of the following instruction:

> "You are instructed that there was in full force and effect on the day in question a statute of the State of Indiana which reads as follows:
>
> '47-2114. *Obedience to signal indicating approach of train.*—Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than (10) feet from the nearest track of such railroad and shall not proceed until he can do so safely, when:
> '(a) A clearly visible electric or mechanical device gives warning of the immediate approach of a train.
> '(b) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a train.
> '(c) A railroad train, as defined in this act, approaching within approximately one thousand five hundred (1,500) feet of a highway crossing emits a signal audible for such distance and such train, by reason of its speed or nearness to such crossing, is an immediate hazard.
> '(d) An approaching train is plainly visible and is in hazardous proximity to such crossing. (Acts 1939, Ch. 48, Sec. 100, p. 289).'
>
> "If you find from a fair consideration of the evidence in this case that the plaintiff's decedent violated the above statute, then you may find that Paul Freeman did not

use due care; however, if you find from a fair preponderance of the evidence in this case that the plaintiff's decedent did not violate the above statute, then you may find that Paul Freeman did use ordinary care."

The essence of the objection to the instruction is if the decedent Freeman did not violate the statute he has then exercised due care when as a matter of law the motorist has a duty to use due care over and above that specified in the quoted statute.

Freeman contends other instructions given by the court cure the complaint that the decedent was obligated by duties other than compliance with the quoted statute. Examples are:

"The failure of a train crew to give the statutory signals of the approach of the train to a public crossing does not relieve the traveler about to cross over the railroad from the exercise of due care to discover the approach of the train.";

"If vision at a railroad crossing is obstructed, increased care is required of a person using such crossing in proportion to the increase in danger. A traveler should look and listen at a reasonably effective place and he must exercise the care made necessary by the hindrance to his vision.";

and,

"If you find from a fair preponderance of evidence that a traveler about to enter a railroad crossing could have seen and heard a train in time to avoid injury had he, with reasonable care, looked and listened, then you may find that he did not look and listen or did not heed what he saw and heard. If you find that such failure to look and listen is the proximate cause of his injury, then his conduct may be regarded as contributory negligence."

(Evidence, viewed favorably for Freeman, indicated a lack of a visual signal at the crossing and the lack of an audible signal by the train).

"The Instructions have to be considered as a whole to determine whether the jury was fairly and properly

instructed. (Citing authorities). All applicable law does not have to be incorporated into one instruction, (citing authorities) . . . ." *Palmer* v. *Decker* (1970), 253 Ind. 593, 255 N. E. 2d 797, at p. 801.

In addition we note that TR. 51(D) requires each instruction to be confined to one legal principle.

We are of the opinion that the jury was properly instructed as to the decedent's exercise of care.

The second allegation of error is based upon the admission of certain testimony by an expert based upon a hypothetical question when there was no proof of the facts assumed in the question.

An expert witness testified to projected earnings of the decedent. Prior to the introduction of the expert's worksheet, the following dialogue took place by way of a preliminary examination of the witness:

"Q. You used here a basic income for the year of death of seventy-two hundred dollars, is that true, Doctor Robertson?

A. That is correct.

Q. And that is based upon two assumptions. One is forty-five hundred dollars net earnings from a school bus route and twenty-seven hundred dollars net income from a small farm?

A. That is my information, yes.

Q. Now, Your Honor, we would therefore object for the reason that this is in the nature of a hypothetical question, asking him what the earnings would be of the present value of a man earning seventy-two hundred dollars would be over the next twenty and one-half years and there is no evidence of earnings of twenty-seven hundred dollars from a small farm. The evidence is that his earnings from the school bus route were not forty-five hundred dollars, but the only testimony at this time indicates an earning of four thousand dollars per year as testified to by Dr. Daily Hill.[1] And my understanding is that on such a

---

1. Daily Hill, Superintendent of the school corporation that employed decedent, testified as to the earnings of school bus drivers for that particular school corporation.

question as this, either the facts must have been presented in evidence or there must be some assurance from the proponent that such facts would be introduced into evidence. Here the evidence is five hundred dollars off because of the school bus earning differential and you take that over a twenty year period, five hundred dollars, I don't know, I can't calculate what it is, but I think it would be a substantial amount of difference."

The trial judge allowed the testimony to remain, subject to later substantiation by Freeman. The court later ruled it admissible and the jury could give the testimony the weight it deserved. The witness' testimony revealed a future earnings projection of $105,447.31, or approximately $500 more than the actual verdict.

Bearing in mind the following quote from *Palmer* v. *Decker, supra,*

"In reviewing the evidence, on appeal, we look to the evidence most favorable to the appellee to determine if there is substantial evidence of probative value or reasonable inferences therefrom to sustain the decision of the trial court. We will reverse the decision only if the evidence and reasonable inferences are undisputed, and could only lead to a decision contrary to the one arrived at by the jury. *State Security Life Ins. Co.* v. *Kintner* (1962), 243 Ind. 331, 185 N. E. 2d 527; *City of Whiting* v. *Grindle* (1945), 115 Ind. App. 407, 59 N. E. 2d 360." 255 N. E. 2d, at p. 798,

we are of the opinion that the required evidence existed to support the questioned testimony. Monon is correct in that there was no direct testimony stating that the decedent did earn $4500 per year driving a school bus or $2700 per year by doing farm work. However, a summary of the testimony from all the witnesses bearing on income would show the decedent to be a hard-working man whose income was increasing yearly, and whose income in the year preceding his death closely approximated $7200.

The case of *Ailes* v. *Ailes* (1937), 104 Ind. App. 302, 11 N. E. 2d 73 (cited by both parties) correctly sets forth the

applicable rule of law to be used in determining the issue at hand. If the question assumes facts which are so clearly exaggerated as to impair the opinion, or are such manifest assumptions as to be misleading, confusing, and outside the evidence or fair inferences to be drawn therefrom, it should be excluded. Where most of the facts assumed in the question were supported by some evidence or by reasonable inferences from the evidence, especially in view of proper instructions as to the weight to be given such testimony, the question is not to be excluded. In addition, a failure to prove a part of the facts embraced in a hypothetical question affects only the reliability of the opinion and the weight to be given the answer.

We are, therefore, of the opinion error did not exist in the admission of the experts' testimony.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported in 284 N. E. 2d 133.