CHICAGO SOUTH SHORE & SOUTH BEND RAILROAD *v.* SYMANTHA V. BROWN.

[No. 3-174A7.  Filed December 18, 1974.  Rehearing denied February 24, 1975.  Transfer denied May 27, 1975.]

*Gilbert F. Blackmun, Peter C. Bomberger, Leonard M. Holajter, Friedrich, Bomberger, Tweedle & Blackmun,* of Hammond, for appellant.

*John Kappos,* of Gary, *Harry Psimos,* of Gary, for appellee.

HOFFMAN, C.J.—This is an appeal by defendant-appellant, Chicago South Shore & South Bend Railroad (Railroad) from a judgment in favor of plaintiff-appellee, Symantha V. Brown,

in an action to recover damages for personal injuries sustained by Brown as she attempted to board defendant-appellant's train.

On February 1, 1971, Mrs. Brown filed her complaint wherein it was alleged, *inter alia*, that she sustained personal injuries while boarding a train and that such injuries were proximately caused by Railroad's negligence. Mrs. Brown requested $250,000 in damages. Following trial before a jury, a verdict was returned in favor of Mrs. Brown in the amount of $125,000. Judgment was subsequently entered on the verdict. Thereafter, Railroad's motion to correct errors was overruled and this appeal was perfected.

An examination of the evidence most favorable to appellee discloses that at approximately 4:45 P.M. on March 11, 1969, Mrs. Brown was waiting at the Van Buren Street Station in Chicago, Illinois, to board a train for a return to her residence in Gary, Indiana. The platform at the station was crowded with other passengers awaiting the same train, as it was each week day at such time. Mrs. Brown stood back and did not attempt to be near the front of the crowd in order to avoid being pushed.

As the train arrived at the station and came to a stop, Thomas Larry Payne, a ticket collector, opened the doors, stepped out, and advised the waiting passengers to watch their step. As Mrs. Brown approached the train door, she was pushed. Her left leg dropped into the space between the train and the platform, causing her to fall on her right shoulder, arm, wrist and leg. Following her fall, Mrs. Brown lifted herself unaided by either the conductor or other passengers who offered no assistance. She thereafter walked into the train and seated herself. Mrs. Brown testified that her clothing was dirty, her stockings were torn and that both of her legs were bruised. She further testified that she was generally "hurting all over" and that her neck felt as though "it had been jerked" when she fell. When the train reached Gary, Mrs. Brown was taken to the Emergency Room at Methodist

Hospital where she received first-aid care for bruises and an injection for pain. X-rays also taken at the time disclosed no fractures of her legs.

It was later determined that Mrs. Brown had suffered a herniated disc at the fourth and fifth interstice of the lumbar section in the lower area of her spine. In the opinion of plaintiff's witness, Dr. Robert S. Martino, such condition was caused by the plaintiff's fall. As a consequence of the condition, a laminectomy was performed. Approximately six weeks after the operation, Mrs. Brown complained of pain in her neck and arm. Thereafter, she underwent a fusion of fifth and sixth cervical vertebrae. Following such operation, Mrs. Brown experienced considerable pain and had difficulty swallowing. As a result, a second cervical fusion was later performed. Complications arising from the operation required further treatment and minor surgery.

The first issue to be considered is whether the verdict of the jury in favor of Mrs. Brown is supported by sufficient evidence.

Appellant contends that it is not the insurer of the safety of its passengers and that its only duty is to exercise ordinary or reasonable care under all circumstances. It is asserted that under the circumstances existing at the time of Mrs. Brown's accident such duty did not include taking any special precaution to prevent Mrs. Brown from being pushed by another passenger and injured thereby. Furthermore, Railroad contends that if the jury could find it was negligent in failing to anticipate the danger and to take adequate precautions, the jury also had to find Mrs. Brown to be contributorily negligent in failing to do the same.

It is undisputed that Illinois substantive law is to be applied in this case. However, remedial and procedural matters are controlled by the law of Indiana, the forum State. See *e.g.*, *Horvath* v. *Davidson* (1970), 148 Ind. App. 203, 264 N.E.2d 328. Application of this principle to the case at bar requires that the subject of duty of care

be governed by the law of Illinois and that questions with regard to the burden of proof at trial and standard of review to be applied by this court be controlled by the law of Indiana.

At trial, appellee-Brown sought to demonstrate that Railroad was negligent in the following manner:

"1. It failed to anticipate the gathering of a crowd at the entrance and exit to its train and failed to take * reasonable precautions * * * to avert injury to Brown by the rushing or crowding of the persons thus assembled.

"2. It failed to keep a proper lookout for the safety of the plaintiff and to provide a person to control and supervise the crowd.

"3. It failed to take cognizance of the habits, customs, and practices followed generally by its passengers insofar as these actions presented a hazard to Brown, and with an awareness of hazards, the railroad failed to reasonably take appropriate steps to avoid injury to Brown.

"4. It was negligent in allowing and not safeguarding the open space between the car and the platform."

Under Illinois law, Railroad, as a common carrier, was bound to exercise a high degree of care toward its passengers. This duty included the responsibility to prevent injuries which would have been reasonably foreseen and avoided by the carrier. *Letsos* v. *Chicago Transit Authority* (1970), 47 Ill. 2d 437, 265 N.E.2d 650.

Mrs. Brown was approaching, with the intent to board, one of Railroad's trains when she fell and therefore was a passenger to whom Railroad owed a duty to exercise a high degree of care. *Katamay* v. *Chicago Transit Authority* (1972), 53 Ill. 2d 27, 289 N.E.2d 623.

If Railroad had reason to anticipate the incident which resulted in Mrs. Brown's injury and failed to exercise the high degree of care and vigilance practicable under the circumstances to prevent the injury, then Railroad is liable for its negligence despite the miscon-

duct of the unknown person or persons who pushed Mrs. Brown. *Letsos* v. *Chicago Transit Authority, supra.*

Whether Railroad had reason to anticipate the incident and whether it exercised the proper care were questions of fact for resolution by the jury. In reviewing the jury's determination of these factual questions, the reviewing court must consider only that evidence supporting the jury's verdict in favor of Mrs. Brown.

The evidence indicates that from 4 P.M. to 6 P.M. on every week day the Van Buren Street Station platform was crowded with people whose principal desire was a fast exit from the city. When a train would arrive at the station, the crowd would push in order to board the train and obtain a seat. Railroad was aware that a crowd was present at such times. A railroad employee, Payne, testified that he would not go out onto the platform during the rush hour because he feared being trampled by the crowd. In light of this evidence, a jury's finding that Railroad had reason to anticipate that a passenger might be injured while boarding a train as a result of the conduct of the crowd is not unsupported.

Although Railroad had knowledge of the presence of an unruly crowd and had reason to anticipate that injury to a passenger might occur, the evidence reveals that the only precaution taken by Railroad involved the requirement that one employee be stationed in the door of the train car and that he advise passengers who were boarding to watch their step and instruct them not to push. Whether this conduct fulfilled Railroad's duty to exercise a high standard of care and whether additional precautions would have been practicable were questions for determination by the jury. Furthermore, a finding by the jury that the precautions taken were insufficient to fulfill the duty owed passengers and that the duty was thereby breached is supported by the evidence.

A finding that Railroad was negligent but at the same time Mrs. Brown was not contributorily negligent are not

unharmonious. Appellant was bound to exercise a high degree of care to protect Mrs. Brown, a passenger, from reasonably foreseeable injuries, but Mrs. Brown was only bound to exercise ordinary care to protect herself. *Francis* v. *Francis* (1973), 9 Ill. App. 3d 90, 291 N.E.2d 857.

Mrs. Brown testified that she was aware of the possibility that the crowd would push while boarding the train. In order to avoid being pushed she stood toward the rear of the crowd. The jury was instructed without objection from Railroad as follows:

> "The fact that a passenger voluntarily makes himself a part of a crowd seeking transportation on a public conveyance, with knowledge that there was possible danger from the customary pushing and struggling by the crowd during the loading of the conveyance does not make the passenger guilty of contributory negligence as a matter of law."

Railroad had the burden of proving Mrs. Brown guilty of contributory negligence. *Memorial Hospital of South Bend, Inc.* v. *Scott* (1973), 261 Ind. 27, 300 N.E.2d 50.

The jury's verdict in favor of Mrs. Brown was, in effect, a finding that Railroad did not meet its burden. Accordingly, Railroad suffered a negative judgment as to this issue.

On appeal from a negative judgment, the burden is upon the appellant to demonstrate that the decision is contrary to law. Only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached a contrary conclusion will the judgment be reversed as being contrary to law. *Heminger* v. *Police Comm. of City of Fort Wayne* (1974), 161 Ind. App. 72, 314 N.E.2d 827, 43 Ind. Dec. 122; *Gary National Bank* v. *Sabo* (1972), 151 Ind. App. 258, 279 N.E.2d 248; *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N.E.2d 573.

Looking to the evidence adduced at trial, together with all reasonable inferences therefrom which tend to support the

finding of the jury, it cannot be said that a finding that Mrs. Brown was not contributorily negligent is contrary to all of the evidence and, therefore, contrary to law.

Railroad also asserts that the trial court erred in the giving of an instruction which would have allowed the jury to find negligence in the existence of a space between the train and platform. Railroad, however, did not object to the giving of the instruction at trial and any error arising therefrom must, accordingly, be deemed waived for purposes of appeal. Furthermore, it is to be noted that Mrs. Brown did not appear to be basing her claim for relief specifically upon this allegation of negligence; and the finding of the jury can be sustained in the absence of any consideration thereof.

The next issue presented is whether the trial court erred in permitting Dr. Martino, a medical witness for the plaintiff, to render an opinion as to the extent of Mrs. Brown's disability.

The following took place during direct examination of Dr. Martino:

"Q. Do you have an opinion as to the impairment that you would give a person with a fusion at cervical five to six (5 to 6)?

"A. Just that level, no. What I would do—well, normally I consider when I do a fusion it's a minimum of twenty-five and the maximum is the whole.

"Q. Now, tell us what is a fusion?

"A. A fusion is just the bringing of two joints together to make one.

"Q. And, how do you do that?

"A. By a surgical operation where you take the cartilage covering the inter end of the bone and you take the bone from the hip, the hipbone and you place it in between or bi-line the bodies and place them into one place.

"Q. So now is it a fact that if Symantha Brown did have surgical fusion of the fifth and sixth (5th—6th), they

would be twenty-five, it would be twenty-five (25%) percent of a woman as a whole?

"BY MR. STANTON:

"Your Honor, I object at this point, to the doctor's opinion as to twenty-five (25%) percent and counsel's referring to the fact that this is so. There has been no testimony from Dr. Martino pertaining to a fusion having been done by him. There was testimony that this was done by Dr. Saavedra. Your Honor, this is his opinion, and as such is pure speculation on his part, and at this point and time I would object and ask that the question and answer be stricken from the record.

"BY MR. KAPPOS:

"Your Honor, we have called the doctor out of order because of various limitations. We would certainly be agreeable that this statement can be stricken, but we feel that in order to alleviate some . . .

"BY THE COURT:

"Do you promise to lay the foundation for such an opinion, Mr. Kappos?

"BY MR. KAPPOS:

"Your Honor, we do.

"BY THE COURT:

"Objection overruled.

\* \* \*

"A. No. I didn't have any follow-up from that.

"Q. Now based upon, and I assumed the C-5 fusion and on your laminectomy that you performed, could you give us a rate of impairment any more than you have spoken about?

"A. No. I can't—unless, without during an examination. All I could say is with the fusion of one level, I would give twenty-five (25%) percent as a minimum. With having had either level, you would assume this. It could be higher, but, of course, this is a guess. And, of course, I wouldn't be able to tell you the whole truth without an examination."

Later, Railroad renewed its objection to Dr. Martino's testimony and requested that the 25% disability opinion be stricken by reason of an alleged failure on the part of the

plaintiff to establish a foundation for such opinion. This motion was overruled.

Railroad contends that since the plaintiff failed to lay a foundation for Dr. Martino's opinion testimony by producing competent evidence that a cervical fusion was, in fact, performed upon Mrs. Brown, such testimony should have been stricken. It is further asserted that Mrs. Brown herself was not competent to testify as to the nature of the surgery performed and that plaintiff's Exhibit No. 19, a hospital bill, was admitted only for the purpose of establishing the amount of Mrs. Brown's medical expenses.

The question propounded to Dr. Martino concerning the extent of Mrs. Brown's disability was in the nature of a hypothetical question. Such a question was proper so long as the facts it assumed are shown to exist by the evidence or reasonable inferences from the evidence. *Chicago, Indianapolis & Louisville R., Inc.* v. *Freeman* (1972), 152 Ind. App. 492, 284 N.E.2d 133 (transfer denied).

Under direct examination, Mrs. Brown testified as follows:

"Q. Did there come a time that you received any further surgery?

"A. Yes.

"Q. By whom?

"A. Dr. Saavedra.

"Q. What did he do? If you know.

"A. He did a cervical fusion."

Railroad did not object to this testimony and, therefore, its argument that Mrs. Brown was incompetent to testify as to the type of surgery perfomed does not support its assertion that the testimony of Dr. Martino should have been stricken.

In *Hinshaw, etc.* v. *Waddell* (1957), 128 Ind. App. 67, at 72, 142 N.E.2d 640, at 643 (transfer denied), the court said:

"It is the rule in Indiana that where incompetent evidence has been admitted without objection or exception it may be

considered upon appeal in determining the sufficiency of the evidence notwithstanding it should have been excluded upon proper and timely objection. *Klinger [Klingler]* v. *Ottinger* (1939), 216 Ind. 9, 22 N.E.2d 805; *Fetter* v. *Powers* (1948), 118 Ind. App. 367, 78 N.E.2d 555." See also: *Page* v. *Board of Commissioners of County of Clay* (1973), 155 Ind. App. 215, 292 N.E.2d 254, 258.

Mrs. Brown's testimony that Dr. Saavedra performed a cervical fusion upon her is sufficient to provide a foundation for Dr. Martino's testimony that a person who had a cervical fusion would have a 25% disability. Therefore, the trial court's overruling of Railroad's renewed objection and motion to strike was not error.

Because the testimony of Mrs. Brown provided a sufficient factual basis for Dr. Martino's testimony, the effect of Exhibit No. 18, a hospital bill listing under diagnosis "Cervical Disc 12-8-70. Cervical Myelogram 12-9-70 Removal of C5-C6 Disc & Interbody fusion." need not be considered.

The final issue to be considered is whether the verdict of the jury awarding plaintiff-appellee Brown damages in the amount of $125,000 was excessive.

Appellant contends that the damages awarded by the jury, more than ten times the amount of Mrs. Brown's medical expenses ($4,470.76) and lost wages ($8,152.37), are so grossly excessive as to demonstrate that the award was based upon improper consideration of the testimony of Dr. Martino as to the existence of a 25% disability.

The evidence shows that Mrs. Brown incurred medical expenses in the amount of $4,470.76. Prior to her fall, Mrs. Brown was employed by the Continental Insurance Company in Chicago as a file clerk earning $2.57 per hour. Before working at Continental she had been employed as a practical nurse earning more ($3.00 per hour) but changed jobs because the potential for advancement at Continental was more favorable. Following her fall at the Van Buren Street Station, she was unable to continue working at Continental because she

was unable to bend over and reach file drawers. After losing her job at Continental, Mrs. Brown worked for Dr. A. S. Williams as a practical nurse at $1.87 per hour. She testified that her wages were low because she was unable to perform many of the duties of a practical nurse.

Further, Mrs. Brown lost a total of $8,152.37 in wages during the period in which she was in the hospital or was otherwise unable to work. At the time of trial, she was working when able for Dr. Williams. Dr. William R. Lewis, Mrs. Brown's family doctor, testified that as a result of her injury, she was unable to perform the duties of a practical nurse.

Mrs. Brown testified that prior to her injury she maintained a home for herself and her seven sons and that as a result of the injuries sustained in the fall she was no longer able to do anything but the lightest housework. She also testified concerning the extreme amount of pain she endured immediately following the fall and during treatment and that she continued to be in pain which, at times, was quite severe. At the time of trial, Mrs. Brown had a life expectancy of 28.14 years.

Railroad's principal argument in support of its contention that the damages assessed by the jury were excessive is that the jury was improperly allowed to consider the testimony of Dr. Martino concerning the 25% disability of Mrs. Brown. Since this testimony was properly admitted, the jury's consideration of it could not have produced an impermissibly large amount of damages.

In *Indianapolis Transit, Inc.* v. *Moorman* (1963), 134 Ind. App. 572, at 578-579, 189 N.E.2d 111, at 115, it is stated:

"On the question of excessive damages in order to justify a reversal 'on such ground, the amount of damages assessed must appear to be so outrageous as to impress the court at "first blush" with its enormity.' *New York Cent. R.R.* v. *Johnson, Admx. etc.* (1955), 234 Ind. 457, 127 N.E.2d 603;

*Louisville, etc., R. Co.* v. *Kemper* (1899), 153 Ind. 618, 53 N.E. 931; *Hines, Director* v. *Nichols, Admr.* (1921), 76 Ind. App. 445, 454, 130 N.E. 140."

Further, in *State* v. *Daley* (1972), 153 Ind. App. 330, at 337, 287 N.E.2d 552, at 556 (transfer denied), wherein this court affirmed an award of $400,000 in an action for wrongful death, it is stated that,

"In order to justify a reversal on grounds of excessive damages, the amount of damages assessed must appear to be so outrageous as to impress the court as being motivated by passion, prejudice and partiality. New York Central Railroad Co. v. Johnson, *supra* [ (1955), 234 Ind. 457, 127 N.E.2d 603]; Northern Indiana Public Service Co. v. Otis, *supra* [ (1969), 145 Ind. App. 159, 250 N.E.2d 378]; Hines v. Nichols (1921), 76 Ind. App. 445, 130 N.E. 140; City of Evansville v. Rinehart (1968), 142 Ind. App. 164, 233 N.E.2d 495.

"Reversal is not justified, however, if the amount of damages awarded is within the scope of the evidence before the court. Northern Indiana Public Service Co. v. Otis, *supra;* First Bank & Trust Co. of South Bend v. Tellson (1954), 124 Ind. App. 478, 118 N.E.2d 496." See also: *Richmond Gas Corporation* v. *Reeves* (1973), 158 Ind. App. 338, 302 N.E.2d 795; *Bonek* v. *Plain* (1972), 153 Ind. App. 516, 288 N.E.2d 185; *Allison* v. *Boles* (1967), 141 Ind. App. 592, 230 N.E.2d 784 (transfer denied).

While in comparison to Mrs. Brown's medical expenses and lost wages, the damages assessed by the jury appear high, there was considerable evidence concerning the pain which Mrs. Brown suffered and will continue to experience, together with evidence concerning her inability to maintain her home and generally live as she did prior to her injury. In *Kavanagh* v. *Butorac* (1966), 140 Ind. App. 139, at 144-145, 221 N.E.2d 824, at 828 (transfer denied), this court discussed assessment of damages for such injuries, stating:

"Broadly stated the person injured by the negligence of another is entitled to reasonable compensation. Courts have said that term means such sum as would reasonably compensate him for bodily injuries, for pain and suffering.

To that sum shall be added past, present, and future expenses reasonably necessary or incidental to the plaintiff's effort to alleviate his injuries and all pecuniary losses suffered, or to be suffered, as a result of inability to engage in his usual occupation. 'Compensation is the stated goal of a court when measuring damages for personal injuries.' 22 Am. Jur. 2d, Damages § 85, p. 121-122.

"By nature, injuries personal to the individual, are incapable of more definite rule for measurement of damages. Each action is unique and it must be so treated and determined on the facts peculiar to that matter. Because our law seeks to individualize the solution to the problem of properly compensating the victim of torts, no overall expedient applies in every case.

"For a formula then, our common law sets only the general guidelines for compensating the victim, each in its own way to be considered by the trier of facts and weighed to determine what the total compensation will be. Because of this personal nature of each case and since the decision is unique to the particular set of facts our courts have said the trier of facts is to be given 'sound discretion,' and 'liberal discretion' where damages cannot be defined and calculated with mathematical certainty or by any exact standard." (Citations omitted.)

In light of the evidence of medical expenses, lost wages, continued disability and constant and periodically severe pain, the verdict is not so outrageous as to impress the court with its enormity nor does it otherwise constitute an abuse of the liberal discretion accorded the jury.

No reversible error having been shown, the judgment entered by the trial court is affirmed.

Affirmed.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 320 N.E.2d 809.

## ON PETITION FOR REHEARING

PER CURIAM.—Appellant's petition for rehearing includes an assertion that our opinion failed to give a statement in writing upon each substantial question arising in the record.

Ind. Rules of Procedure, Appellate Rule 11(B) (2), provides that one of the errors upon which transfer may be based is:

"(e) that the decision of the Court of Appeals fails to give a statement in writing of each substantial question

arising on the record and argued by the parties. If this error is relied upon, the petition shall set forth such portions of the record so as to affirmatively disclose such failure, and establish that petitioner was prejudiced thereby."

Although Ind. Rules of Procedure, Appellate Rule 11(B), is couched in terms of seeking transfer to the Supreme Court, we must consider its application on petitions for rehearing since the grounds enumerated in Rule AP. 11(B)(2), *supra*, are classified as errors committed by the Court of Appeals.

To invoke the rule in question four elements are necessary:

1. The question must be substantial.
2. It must appear both on the record and in the argument on appeal.
3. The petition must set forth such portions of the record as affirmatively disclose points 1 and 2.
4. The petition must establish that the petitioner was prejudiced in the determination of the appeal by the failure of the Court of Appeals to give a statement in writing upon the question.

The assertion made by appellant relates to an instruction given by the court without objection. The failure to object waived any potential error. Ind. Rules of Procedure, Trial Rule 51(C); *General Electric Co.* v. *Dorr, et al.* (1966), 140 Ind. App. 442, 218 N.E.2d 158 (transfer denied).

As the claimed defect was not available as error, it did not raise a substantial question and appellant could not establish prejudice in the determination of its appeal through any failure of the Court of Appeals to discuss the question in writing. Cf. *O'Connor* v. *O'Connor* (1969), 253 Ind. 295, 253 N.E.2d 250.

We also note that even though it was thus unnecessary to discuss the alleged error in our opinion in *Chicago South Shore & South Bend Railroad* v. *Brown* (1974), 162 Ind. App. 493, at 500, 320 N.E.2d 809, at 813-814, we stated as follows:

"Railroad also asserts that the trial court erred in the giving of an instruction which would have allowed the jury

to find negligence in the existence of a space between the train and platform. Railroad, however, did not object to the giving of the instruction at trial and any error arising therefrom must, accordingly, be deemed waived for purposes of appeal."

Rehearing on all matters raised by appellant in its petition for rehearing is denied.

NOTE.—Reported at 323 N.E.2d 681.